**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| TREMAIN HUTCHINSON, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:12-CR-0409-TCB-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:16-CV-0037-TCB-RGV |

**FINAL REPORT AND RECOMMENDATION**

This matter has been submitted to the undersigned Magistrate Judge for consideration of Tremain Hutchinson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 106], the government's response, [Doc. 114], and Hutchinson's reply, [Doc. 117].  For the reasons that follow, it is **RECOMMENDED** that Hutchinson's § 2255 motion be **DENIED**.

**I. PROCEDURAL HISTORY**

A federal grand jury in the Northern District of Georgia returned a twenty-four count third superseding indictment against Hutchinson, charging him in Counts One, Three, Five, Seven, Nine, Ten, Twelve, Thirteen, Sixteen, Eighteen, and Nineteen with sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e); in Counts Two, Four, Six, Eight, Eleven, and Fourteen with enticing and coercing minors to

engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b); in Counts Fifteen and Seventeen with transferring obscene material to minors, in violation of 18 U.S.C. § 1470; and in Counts Twenty through Twenty-Four with distributing, receiving, possessing, and/or advertising child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), (a)(3)(B), (a)(4)(B), and (b). [Doc. 77]. Represented by Victoria Marie Calvert ("Calvert") and Jeffrey Lyn Ertel ("Ertel") of the Federal Defender Program, Inc., Hutchinson entered a non-negotiated guilty plea to Counts One, Two, Eight, Seventeen, and Eighteen. [Docs. 85; 85-1; 102].

At the plea hearing, Hutchinson was placed under oath and confirmed that he understood the rights he was giving up by pleading guilty. [Doc. 102 at 2-4]. Hutchinson further understood that he was charged in Count One with "coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct," in Count Two with "knowingly attempting to persuade or entice an individual who was not 18 years old to engage in sexual activity for which a person could be charged with rape" and further with actually raping the victim, in Count Eight with using interstate commerce for statutory rape and child molestation, in Count Seventeen with "knowingly transferring obscene matter to an individual who was not yet 16 years old," and in Count Eighteen with "persuading a minor to engage

in sexually explicit conduct for the purpose of producing a [visual depiction] that [he] knew would be transported in interstate commerce." [Id. at 4-6]. The government then summarized what the evidence would show if the case went to trial as follows:

> Each of the victims using their cellular telephones were subscribers to a social medial site called [Tagged.com, which] is similar to other social media websites in that it allows subscribers to meet and communicate online. Each user can create a profile giving a name and other information of their choosing. The site only allows users whose profiles list them as minors to have contact with other minors. In other words, an adult should not be able to communicate with a minor in Tagged. For this reason, each user is required to include in his profile his age.
>
> [Hutchinson,] who was 27 years old at the time[,] created numerous profiles using various names and pictures of a teenager, and represented himself to be 16 years of age, thereby having access to teenagers on the site. Using these profiles, he sent messages to young girls in which he offered to buy them cellular phones, pay their phone bills, and pay to get their hair and nails done. Once the girls responded to his message, he persuaded them to give him their telephone numbers, and then he called them, sent them text messages, and used chats on Tagged to persuade them to send him nude photographs of themselves.
>
> After [Hutchinson] received a nude photograph or photographs of the girls, he threatened to post them on the internet and on their school websites or to send the photographs to their parents unless they continued to send more and more explicit photographs and videos of themselves engaging in sexual activity to him via the internet.
>
> The sexual activity he ordered them to engage in included inserting objects into their genitals, engaging in oral intercourse, and engaging in intercourse generally.

3

In at least three instances [Hutchinson] coerced older sisters to engage in oral intercourse with their younger brothers while streaming the activity to him via their cell phones using an application called uzu (phonetic). [Hutchinson] also threatened to harm the girls and their families if they did not give in to his demand, and actually posted on the internet the photographs and videos of some of the girls when they did not act in accordance with his wishes.

In November of 2011 [Huthchinson] met K.H., who had just turned 16 years old, on Tagged, and he persuaded her to send him a nude photograph of herself. He also persuaded her to send her telephone number to him. Over the course of several months, all through from November to April of 2012, [Hutchinson] threatened K.H. with exposure on the internet, and with threats to her family to coerce K.H. to send him naked photographs and sexual videos of herself masturbating with various objects. [Hutchinson] also demanded that she engage in sexual activity with whomever she was with at the time he was communicating with her, and stream those images to him live. K.H. refused to engage in that sort of activity.

In early February of 2012 [Hutchinson] learned from K.H. that she was at home alone one day. She was home sick from school. And he demanded, using threats to harm her and her family, that she tell him where she lived. On his way to K.H.'s home, [Hutchinson] informed K.H. that he was actually not the boy she thought she had been communicating with on Tagged and by phone and by text. When [Hutchinson] arrived at K.H.'s home, and she refused to let him in, he told her that either she would let him in or he would find his way in anyway. Once he got into her home, he raped K.H., forcing her to engage in both vaginal and oral intercourse with him. Even after [Hutchinson] raped K.H. on that date, promising to leave her alone, he continued to threaten her via text messages and phone calls to get her to send more photographs and videos and to allow him to have sexual intercourse with her again. [Hutchinson] was aware that K.H. was 16 years old because she told him her age.

4

In January of 2012 [Hutchinson] met D.P. on Tagged.com. At that time D.P. was 13 years old. And she told [Hutchinson] that she was 13. [Hutchinson] attempted to entice and coerce D.P. to send images of herself in the nude, but she refused to do so. He also attempted to coerce her to engage in sexual activity with others, and transmit the images to him via the internet, which she also refused to do. However, [Hutchinson] persuaded D.P. to give him not only her telephone number, but her address as well. One night he picked D.P. up in her neighborhood, and drove her to a secluded area where he raped her, forcing her to engage in both vaginal and oral intercourse. After [Hutchinson] raped D.P. he picked up another adult male, while driving with D.P. and the second man in the car, [Hutchinson] saw D.P.'s friend J.H., who was 11 years old at the time, walking home.

[Hutchinson] ordered J.H. to get into his car, telling her he had a gun, and stating that she had to get into the car or else. Once J.H. got into the car, he drove both girls into a cul-de-sac where he raped J.H. while the adult male he had picked up raped D.P.

[Hutchinson] met M.M. initially on Tagged when she was 12 years old. He demanded that she send him naked photographs and threatened her. At that time M.M. stopped talking to [Hutchinson]. Two years later, M.M. met [Hutchinson] on Tagged again. This time she was about 14 years old, and this time [Hutchinson] coerced M.M. into sending nude photographs of herself to him. [Hutchinson] also attempted to have M.M. meet him for sexual activity. During their chats, [Hutchinson] sent to M.M. photographs of himself, including photographs showing his face, and at least one photograph of his penis. M.M. informed [Hutchinson] that she was just 14 years old at that time.

. . . [T]his investigation began when a mother saw images of her daughter performing oral intercourse on her younger son on a cell phone. When the mom reported the incident to the police, her daughter, who is referred to in the indictment as VM-1, explained that a person she had met on the internet had threatened to blow their home up or come to her school to get

her unless she streamed live images of herself engaging in that activity with her brother to him. VM-1 gave the person's telephone number that she had been communicating with to DeKalb County investigators, [who] then obtained subscriber information for the telephone number.

The number[] was registered to Janice Reynolds, [Hutchinson's] mother. When the investigators went to Ms. Reynold's home, they encountered [Hutchinson], and while there investigator Kennedy dialed the telephone number that VM-1 had been communicating with. The phone range in the room, and [Hutchinson] answered the phone. [Hutchinson] agreed to have his phone forensically analyzed, and numerous images of young girls in various degrees of nudity were found on his phone. Many images of young girls, including videos of them performing sexual acts were also found on the computer that was seized from the apartment pursuant to a search warrant.

[Hutchinson] agreed to be interviewed by the investigators, and he admitted to communicating with females and persuading them to send him photographs of themselves, although [Hutchinson] did not explicitly acknowledge that he was communicating with minors.

Victims K.H. and J.H., a 16-year-old and an 11-year-old who I mentioned were raped by [Hutchinson], picked him out of photographic lineups.

[Id. at 10-15]. Calvert stated that although she and Hutchinson did not agree with many of the facts stated by the government, they did agree with enough of the factual basis to establish that Hutchinson had committed the five offenses to which he was pleading guilty. [Id. at 16]. Hutchinson expressly agreed with Calvert's statement and admitted that he was in fact guilty of those five counts. [Id.]. The Court accepted

6

Hutchinson's plea, [id.], and subsequently imposed a total sentence of life imprisonment, [Doc. 92].

Hutchinson, still represented by Calvert and Ertel, appealed, arguing only that his sentence was procedurally and substantively unreasonable. Br. of Appellant at 12-20 (May 27, 2014), United States v. Hutchinson, 588 F. App'x 894 (11th Cir. 2014) (No. 14-10161), 2014 WL 2557609, at *12-20. On October 8, 2014, the United States Court of Appeals for the Eleventh Circuit affirmed Hutchinson's sentence. Hutchinson, 588 F. App'x at 899-900.

Hutchinson timely filed this pro se § 2255 motion, arguing that: (1) counsel was ineffective for (a) failing to establish an adequate factual basis on the record by stating the exact facts to which Hutchinson agreed and (b) allowing Hutchinson to plead guilty when the Court failed to list and explain every element of the crimes to which he pled guilty; (2) counsel was also ineffective for allowing Hutchinson to plead guilty when the Court failed to establish a factual basis as to every conjunctively-pled manner of committing the crimes to which he pled guilty; (3) counsel was ineffective for failing to move to dismiss the indictment on the ground that Congress does not have the authority under the Commerce Clause to criminalize the conduct at issue; (4) counsel was further ineffective for not moving to dismiss the indictment on the ground that his

7

conviction violates the Tenth Amendment because the State of Georgia could have prosecuted his conduct; (5) Congress does not have the authority under the Commerce Clause to criminalize the conduct at issue; and (6) his conviction violates the Tenth Amendment because the State of Georgia could have prosecuted his conduct. [Doc. 106 at 4-9, 13-21; Doc. 106-1 at 2-29]. The government responds that grounds five and six are both procedurally defaulted and meritless and that Hutchinson's ineffective assistance of counsel claims lack merit. [Doc. 114 at 2-3, 9-24]. Hutchinson replies, reasserting the merits of his grounds for relief. [Doc. 117].

## II.  DISCUSSION

### A.  Legal Standards

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States

8

v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's

9

performance was reasonable and adequate. . . .") (citation omitted). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.").

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

**B.    Grounds One and Two: Counsel's Assistance During Plea Colloguy**

In grounds one and two, Hutchinson argues that counsel was ineffective for failing to establish an adequate factual basis on the record by stating the exact facts to which Hutchinson agreed, allowing Hutchinson to plead guilty when the Court failed

10

to list and explain every element of the crimes to which he pled guilty, and allowing Hutchinson to plead guilty when the Court failed to establish a factual basis as to every conjunctively-pled manner of committing the crimes to which he pled guilty. [Doc. 106 at 4-9; Doc. 106-1 at 2-9]. To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). Hutchinson has the burden of affirmatively proving prejudice. Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

As to Hutchinson's claim that counsel was ineffective for agreeing that there was a sufficient factual basis for the guilty plea without specifying the facts to which

11

Hutchinson disagreed, the Eleventh Circuit has upheld a guilty plea even though the defendant "agreed only to 'most' of the government's proffer[] and . . . the district court did not question him further on which portions of the proffer he disagreed with." United States v. Puentes-Hurtado, 794 F.3d 1278, 1287 (11th Cir. 2015). Because the defendant admitted his guilt under oath, "any deficiency in the factual basis" did not affect his "substantial rights." Id. In this case, Hutchinson expressly agreed with counsel's statement that the factual basis was sufficient and admitted his guilt. [Doc. 102 at 16]. Thus, he fails to show deficient performance by counsel on this ground. Additionally, Hutchinson fails to show prejudice because he has not shown that the portion of the factual basis to which he agreed was insufficient to support his guilty plea and has not alleged that, had counsel objected to the proffered factual basis, he would have changed his plea.

The Court was not required to list and explain every element of the charged crimes. United States v. Wiggins, 131 F.3d 1440, 1442-43 (11th Cir. 1997) (per curiam) ("[T]here is no one mechanical way or precise juncture that a district court is required to inform the defendant of the nature of the charges."). In fact, when a defendant receives a copy of the indictment, "[s]uch circumstances, standing alone, give rise to a presumption that the defendant was informed of the nature of the charge

12

against him." Bousley v. United States, 523 U.S. 614, 618 (1998) (citation omitted). In Wiggins, the Eleventh Circuit upheld a defendant's guilty plea even though the district court never outlined each element of the offense separately. Id., 131 F.3d at 1442-44. Among other things, the Court found it significant that the district court had asked the defendant whether he understood the nature of the charges, the defendant pled guilty unequivocally and admitted the he in fact committed the offense, and the district court, after observing the defendant's demeanor and intelligence, made a factual finding that he had entered an informed plea. Id. at 1442.

In this case, Hutchinson received a copy of the indictment, see [Doc. 85-1]; the Court described in sufficient detail the charged crimes and asked whether Hutchinson understood the nature of the charged offences, [Doc. 102 at 4-6]; Hutchinson unequivocally pled guilty and admitted that he had in fact committed the charged offenses, [id. at 16]; and the Court found that Hutchinson had entered an informed plea, [id.]. Thus, counsel committed no error in allowing Hutchinson to plead guilty even though the Court did not list each and every element of the charged crimes, and Hutchinson cannot show prejudice. Bousley, 523 U.S. at 618; Wiggins, 131 F.3d at 1442. See also Puentes-Hurtado, 794 F.3d at 1286. Furthermore, Hutchinson fails to

13

show prejudice because he does not allege that he would have rejected the plea had the Court listed each and every element of the offenses to which he pled guilty.

> Where a penal statute . . . prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment, . . . the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by committing any one of the acts alleged, violated the statute.

United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989) (per curiam). Thus, counsel also was not ineffective, and Hutchinson cannot show prejudice, based on counsel's failure to object that the Court did not establish a factual basis as to every conjunctively-pled manner of committing the crimes to which he pled guilty. Accordingly, Hutchinson is not entitled to relief on grounds one and two.

**C. Grounds Three and Four: Counsel's Failure to Move to Dismiss the Indictment**

In grounds three and four, Huchinson asserts that counsel was ineffective for failing to move to dismiss the indictment on the grounds that (a) Congress does not have the authority under the Commerce Clause to criminalize the conduct at issue and (b) his conviction violates the Tenth Amendment because the State of Georgia could have prosecuted his conduct. [Doc. 106 at 13-18; Doc. 106-1 at 10-14].

14

The Eleventh Circuit has held that Congress has the authority to criminalize communications of a sexual predator using an instrumentality or channel of interstate commerce to seek out child victims. See United States v. Smith, 459 F.3d 1276, 1282-85 (11th Cir. 2006) (holding that Congress has authority under the Commerce Clause to regulate even wholly intrastate production of child pornography under § 2251(a) when the pornography was produced using materials that were shipped in interstate commerce); United v. Hair, 178 F. App'x 879, 886 (11th Cir. 2006) (per curiam) (finding that use of instrumentalities of interstate commerce, including the Internet, provided a sufficient basis to warrant federal jurisdiction over possession of child pornography charge); United States v. Hornaday, 392 F.3d 1306, 1310-11 (11th Cir. 2004) (rejecting as meritless defendant's challenge to his § 2422(b) conviction on the ground that Congress lacked the authority "to criminalize communications of a sexual predator using an instrumentality or channel of interstate commerce to seek out child victims, unless those communications are directly with the intended victims"). In this case, the plea hearing transcript reveals that Hutchinson clearly understood that he was charged with "coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct[,] . . . with knowingly attempting to persuade or entice an individual who was not 18 years old to engage in sexual activity

15

for which a person could be charged with rape" and further with actually raping the victim, with using interstate commerce for statutory rape and child molestation, with "knowingly transferring obscene matter to an individual who was not yet 16 years old," and with "persuading a minor to engage in sexually explicit conduct for the purpose of producing a [visual depiction] that [he] knew would be transported in interstate commerce." [Doc. 102 at 4-6]. Furthermore, Hutchinson admitted that he was in fact guilty of those offenses. [Id. at 16]. Thus, the Court properly convicted Hutchinson of those crimes. See Smith, 459 F.3d at 1282-85; Hair, 178 F. App'x at 886; Hornaday, 392 F.3d at 1310-11.

Because the statutes under which Hutchinson was convicted are permissible under the Commerce Clause, they do not violate the Tenth Amendment. See Cheffer v. Reno, 55 F.3d 1517, 1519 (11th Cir. 1995) ("Congress' valid exercise of authority delegated to it under the Constitution does not violate the Tenth Amendment." (citation omitted)). Indeed, a federal prosecution is not barred even after a state has prosecuted the same person for the same acts. Abbate v. United States, 359 U.S. 187, 189-96 (1959). Accordingly, counsel was not ineffective, and Hutchinson cannot show prejudice, for counsel's failure to raise these meritless arguments in a motion to dismiss the indictment, and grounds three and four fail. See Owen v. Sec'y for Dep't

16

of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (Counsel's failure to raise arguments that lack merit "cannot constitute ineffective assistance of counsel." (citations omitted)).

**D.     Grounds Five and Six are Procedurally Defaulted**

In grounds five and six, Hutchinson argues that Congress does not have the authority under the Commerce Clause to criminalize the conduct at issue and that his conviction violates the Tenth Amendment because the State of Georgia could have prosecuted his conduct. [Doc. 106 at 19-21; Doc. 106-1 at 15-29]. Hutchinson did not raise these claims on direct appeal.

A criminal defendant who fails to raise an issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent (1) a showing of cause for the default and actual prejudice or (2) a showing of actual innocence. McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011). "[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . ." or that the matter was not raised because of ineffective assistance of counsel. Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam). A movant may also establish cause for the procedural default if he can show "that his attorney's performance failed to meet the Strickland standard for effective assistance of counsel." Reece v. United States,

17

119 F.3d 1462, 1465 (11th Cir. 1997) (internal quotation marks and citation omitted). If a movant shows cause, he must also show prejudice, i.e., that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece, 119 F.3d at 1467 (citation omitted). To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." McKay, 657 F.3d at 1196 (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Hutchinson cannot rely on ineffective assistance of appellate counsel to excuse the default of these claims because, as discussed in section II.C, they are meritless. See Smith v. Murray, 477 U.S. 527, 536 (1986) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." (internal quotation marks and citation omitted)); United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (holding that only a meritorious ineffective assistance of counsel claim may constitute cause). Hutchinson has not alleged any other cause and resulting prejudice to excuse the procedural default.

18

Additionally, Hutchinson presents no new evidence to meet the actual innocence exception. Thus, grounds five and six are procedurally barred.[1]

### III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

---

[1] Hutchinson's ineffective assistance of counsel claims are not procedurally defaulted because "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro v. United States, 538 U.S. 500, 509 (2003).

19

Based on the foregoing discussion of Hutchinson's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 106], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 23rd day of June, 2016.

*/s/ Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE